IN THE UNITED STATES DISTRICT COURT
NORTHISN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARCELLA J. BROWN, | ) | CASE NO.  1:23-CV1096 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JAMES S. GWIN |
| vs. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | REPORT & RECOMMENDATION |
| | ) | |

Plaintiff, Marcell J. Brown ("Brown"), challenges the final decision of Defendant, Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of Act.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

Brown protectively filed an application for SSI on August 22, 2018. Transcript ("Tr." 71) She alleged a disability onset date of July 14, 2008, and claimed disability due to post-traumatic stress disorder ("PTSD"), bipolar, general anxiety disorder, severe depressive disorder, and chronic lower back pain. (Tr. 55). Her application was denied initially and upon reconsideration, and Brown requested a hearing before an administrative law judge ("ALJ"). (Tr. 71, 87, 110)

1

A telephonic hearing was held, and on July 21,2020, ALJ George Roscoe issued an unfavorable decision. (Tr. 12-28) The Appeals Council denied review of the decision and Brown timely appealed to this Court. This Court remanded the matter on May 16, 2022 in Case No. 1:21cv1042 after finding that ALJ Roscoe violated agency regulations by failing to address the supportability and consistency of one of the medical opinions (OT Milicia). (Tr. 1591-1615).

A telephonic hearing was held after the remand on January 17, 2023 (Tr. 1546-1573). Brown, represented by counsel, testified. *Id.* Vocational Expert Robert Breslin also testified. (*Id.*) After the hearing, ALJ Penny Loucas issued an unfavorable decision dated February 22, 2023 (Tr. 1509-1545)

Brown then filed the instant Complaint challenging the Commissioner's final decision. (Doc. No. 1)  The parties have completed briefing in this case. (Doc. Nos. 9, 11, 12) In her brief, Brown lists three assignments of error:

1.      The ALJ erroneously failed to comply with the previous order of this Court.

2.      The ALJ erred and her decision was not supported by substantial evidence when she failed to properly evaluate the opinions of the treating and consulting sources in accordance with 20 CFR 416.920c.

3.      The ALJ erred and her decision was not supported by substantial evidence as she failed to properly evaluate the effect of Plaintiff's pain throughout the entire Sequential Evaluation.

(Doc. No. 9 at 1)

## II.    EVIDENCE

### A.    Personal and Vocational Evidence

Brown was born in 1975 and was 42 years-old at the time her application was filed, making her a "young individual age 18-49" under social security regulations. (Tr. 153, 1539) *See* 20 C.F.R. § 416.963 She has a limited education and has no past relevant work. (Tr. 1539)

2

**B.**     **Relevant Medical Evidence[1]**

    **1.**     **Treatment Notes – Physical Impairments**

On April 18, 2008, Brown treated with Dr. Sami Moufawad for pain management. (Tr. 237) Dr. Moufawad stated that Brown had responded well to injections the prior month but her pain had gotten worse after she was rear ended in a motor vehicle accident. *Id.* She had pain with extension with no radicular components, no history of weakness or sensory changes in the lower limbs. *Id.* Dr. Moufawad's impression was lumbar facet pain with dysfunction bilaterally at L4/5 and L5/S1, lumbar spondylosis, and lower back pain with myofascial component. (Tr. 237) He prescribed a TENS unit, a muscle relaxant, and a steroid injection. *Id.* As of November 24, 2009, Brown reported her pain was difficult to control and interfered with her activities of daily living, ambulation, and enjoyment of life (Tr. 241). Dr. Moufawad continued Brown on the muscle relaxant and TENS Unit, he also added Percocet to her medication regime and recommended a series of 2 steroid injections. (Tr. 241-42)

On February 22, 2011, Brown returned to Dr. Moufawad. (Tr. 245) He noted that he had not seen Brown in almost 2 years and she had been doing well with the previous injections but her back pain had been returning over the last several months. *Id.*  She reported fatigue but no radicular components, weakness, or sensory changes. *Id.* She was given Vicodin and steroid injections were recommended. *Id.* It was also noted that radiofrequency ablation may be considered in the future with continued pain. *Id.* In October 2011, Brown returned to Dr. Moufawad and reported worsening pain that interfered with her daily living and ambulation. (Tr. 247) She stated the pain was radiating to her buttocks but not lower limbs. *Id.* Although it was noted Brown responded well to facet injections, she stated she did not want them anymore

---

[1] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' briefs.

because the last one did not help much. *Id.* Percocet was prescribed. *Id.* A December 2011 EMG was compatible with prolonged F wave of the left tibial nerve without evidence of axonal loss. (Tr. 263-264) An MRI was also recommended. *Id.*

In January 2012 it was noted that pain now radiated to Brown's left foot and leg and an MRI showed posterior disc bulge at L4/5 and L5/S1 with impingement on the thecal sac. (Tr. 249) She was diagnosed with left lumbar radiculopathy and requested injections because the pain was "getting worse" and "affecting her more." *Id.* In February 2012, it was reported that the injections helped bring Brown's pain level down in the left lower limb and she was able to function, perform activities of daily living, and was not limping. (Tr. 251) She was continued on Percocet and the TENS unit. (Tr. 251-52)

A February 2013 MRI demonstrated thoracic and lumber vertebral bodies were in anatomic alignment. (Tr. 265) The MRI also found broad-based posterior disc herniation at L5/S1 with no significant neuroforaminal narrowing and at L4/5 imaging was compatible with an annular tear and posterior disc bulge at L4/5 (Tr. 265-266). A CT scan that month found mild protrusion of the disc at L5/S1 with mild left foraminal narrowing and a mild diffuse building of the disc with mild foraminal narrowing bilaterally at L4/L5. (Tr. 267) In April and July 2013, Brown presented to the emergency room for headaches and dizziness. (Tr. 313-21) Physical exams during these visits revealed normal range of motion and strength and systems reviews were negative for back pain. (Tr. 314, 320) Brown was crying at intake during the April ER but demonstrated a normal mood at the July visit. (Tr. 314, 318)

In March 2014, Brown presented to the emergency room complaining of lower back pain radiating down her left leg with no weakness or paresthesia. (Tr. 307-310). She reported that she had a steroid injection in February but had worsening pain over the prior three days after she

4

attempted to raise a garage door at her home. (Tr. 308) She was seated in a wheelchair unable to stand secondary to pain but after medication felt better and left with a steady gait. (Tr. 310)

Brown had another epidural steroid injection on August 29, 2017.[2] (Tr. 501-502) Brown began treating with Sara Eapan the following month. (Tr. 483) Brown reported getting short of breath walking up and down stairs. *Id.* She reported back pain limited her ability to exercise but was active in her house with cooking and cleaning. *Id.* A physical and psychiatric examination revealed no abnormalities. (Tr. 486) Brown was provided weight loss tips and advised to return in 2 months. (Tr. 487) A May 2018 MRI revealed mild degenerative disc bulges at L4/5 and L5/S1 indenting the anterior thecal sac. (Tr. 798) In October 2018, Brown returned to Dr. Eapan. (Tr. 490) A physical examination was normal and medications were refilled. (Tr. 491-92)

On August 13, 2019, Brown presented to the ER complaining of back and lower right extremity pain. (Tr. 911) A CT scan showed bilateral neuronal impingement at L4/L5 and L5/S1. (Tr. 913) Brown was provided steroid medication and muscle relaxants and was referred to the spine center. *Id.* On August 16, 2019, Brown had an initial visit with Jason Eubanks, MD, Chief of Spine Surgery with University Hospitals. (Tr. 774) Brown reported back pain with mild radiation into her hamstrings. *Id.* It was noted that Brown had not engaged in any past physical therapy. *Id.* A physical exam demonstrated tenderness and a positive straight leg raise (SLR) at 30 degrees. (Tr. 912) It also demonstrated a normal range of motion without pain and 5/5 strength in lower extremities. (Tr. 776) It was stated that the CT scan demonstrated disc bulges at L4/5 and L5/S1. (Tr. 776) Brown was diagnosed with chronic bilateral low back pain without sciatica and referred to physical therapy. (Tr. 776-777) Dr. Eubanks also stated:

> I stressed that the natural history of disc degeneration is usually favorable, with pain and disability decrease over time when treated with a multi-modal, focused rehabilitation

---

[2] Neither Brown's brief nor the Commissioner's brief include a discussion of physical treatment records between March 2014 and August 2017 in their Statement of Facts.

program. I encouraged, therefore, continued non-operative care, focusing on core strengthening, regular cardiovascular exercise, abstaining from nicotine products, and maintaining a health weight.

At this time, we will initiate physical therapy. If her symptoms persist, she will need an MRI and follow-up.

(Tr. 777)

In October and December 2019, Brown presented to the ER with complaints of back pain with a 10/10 severity rating. (Tr. 1425, 1446) At the October 2019 visit, Brown had no tenderness and full range of motion. (Tr. 852) At the December 2019 visit, she had tenderness and a positive SLR at 20 degrees. (Tr. 1437) She also had normal range of motion in both lower extremities and normal ambulation. In June 2019, Brown presented to the emergency room with chest wall pain, she also complained of back pain without joint pain. (Tr. 963, 972) An examination revealed no muscle or joint tenderness and full range of motion. *Id.* An August 2019 CT scan showed mild disc space narrowing and small disc bulges at L4/5 and L5/S1 with no significant central canal or neural foraminal stenosis. (Tr. 892) During medical visits in August, October, and December 2019, Brown complained of back pain, tenderness, and had reduced range of motion. These visits also documented normal sensory and motor function and good strength in her upper and lower extremities. (Tr. 852, 912, 1436-37)

In January 2021, Brown visit with Dr. Sara Eapan due to blood pressure concerns. (Tr. 1781) Back pain complaints were not noted on this visit and an examination showed a normal gait and absence of focal and sensory defects. (Tr. 1784) Dr. Eapan recommended Brown walk for 30 minutes a day and eat a healthy diet. (Tr. 1781) In December 2021, Brown met with Dr. Mark Unger at University Hospitals GI Clinic. It was noted that she sat on the exam table with no abnormalities detected. (Tr. 1846) She also had a normal gait and no sensory or motor deficits. *Id.* In January 2022, Brown returned to Dr. Unger and reported a normal range of motion and no joint

6

weakness or stiffness. (Tr. 1849) At a counseling session that same month, Brown reported she was "feeling much better both physically and mentally." (Tr. 1733) However, in June 2022, Plaintiff requested a pain management referral. (Tr. 1757).

On July 7, 2022, Brown received pain management services from Dr. Evan Chernoff and Dr. Al-Amin Khalil[3] for her lumbar radiculopathy, lumbar radiculitis, and fibromyalgia (Tr. 1804-09) Brown reported lower back pain that radiated down to the lower left extremity at a 6/10—worse with standing, siting, and walking and alleviated with baclofen and stretching. (Tr. 1805) It was noted that Brown had not completed any physical therapy. *Id.* An examination revealed spinal tenderness with full muscle strength, the ability to walk on heels/toes, and a tandem gait. (Tr. 1808) It also revealed a positive seated slump test and positive SLR test on the left. *Id.* Dr. Chernoff recommended that Brown start physical therapy, take Topamax, begin using a TENS unit, and lose weight. (Tr. 1805)

## 2. Treatment Notes – Psychological Impairments

Brown attended counseling with Signature Health beginning in 2016. During her initial assessment on April 6, 2016, Brown was diagnosed with major depressive disorder and panic disorder (Tr. 514-517). The medical record reflects that Brown received counseling services with Signature Health from 2016 through 2022.[4] (Tr. 518-760, 1384-1412, 1733)

At a February 2022 counseling session, Brown reported feeling "much better both physically and mentally." (Tr. 1733) She stated she still felt anxious and depressed at times but medication and coping skills were helping. *Id.* A mental status exam was unremarkable.

---

[3] The medical note is signed by both Dr. Chernoff and Dr. Khalil. The ALJ refers to the notes as Dr. Chernoff's notes (Tr. 1809). Plaintiff refers to the notes as (Doc. No. 9 at 5). In the discussion of the ALJ's decision below the Court will refer to the notes as Dr. Chernoff's to be consistent with the ALJ's decisional language.

[4] Brown did not summarize any mental health treatment records in her Statement of Facts. Thus, the summary is limited to items included in the Commissioners brief.

### 3.    Medical Opinions

**Michael  Milicia  OT/L**  Brown  attended  a  Physical  Functional  Capacity  Evaluation ("FCE")  with  Occupational  Therapist  Michael  Milicia  at  the  Cleveland  Clinic  on  September  14, 2018,  for  the  purpose  of  making  recommendations  for  Brown's  disability  application.  (Tr.  1367-69)  Brown  was  observed  sitting  for  1  hour  and  20  minutes  and  standing  for  a  total  of  33  minutes (19  minutes  at  one  time).  (Tr.  1368)  OT/L  Milicia  stated  that  based  on  his  standing  and  sitting observations  "and  taking  into  account  full  time  work"  Brown  is  able  to  stand  up  to  1  hour  and  45 minutes  and  sit  for  19  minutes  at  a  time.  *Id.*  OT/L  Milicia  opined  that  Brown  could  perform sedentary  physical  work  but  stated  that  her  occupational  base  was  significantly  eroded  due  to  her standing  and  sitting  limitations.  (Tr.  1368)  OT/L  Milicia  also  made  the  following  notation:

> Consistency of Effort results obtained during testing indicate significant
> observational and evidence based inconsistencies resulting in self-limiting
> behavior and submaximal effort.
> Reliability of Pain results obtained during testing indicate pain could have
> been considered while making functional decisions.

(Tr. 1368)

**Dr.  Sioson**  The  State  Agency  referred  Brown  for  a  consultative  examination  on  June  26, 2019,  with  Dr.  Eugene  Sioson.  (Tr.  766-67)  During  the  examination,  Brown  walked  with  a  slight limp,  declined  to  perform  heel/toe  walking  or  squat  due  to  back  pain,  and  could  not  get  up  on  the exam  table.  (Tr.  767)  Dr.  Sioson's  impression  was  severe  back  pain  with  no radiculopathy/joints—no  gross  deformity,  subluxation  or  inflammatory  changes  in  the  joints  and high  blood  pressure.  (Tr.  767)  He  stated,  "if  one  considers  and  accepts  her  pain  and  above findings  she  would  not  be  able  to  do  any  work-related  activities  including  walking,  standing, lifting  and  carrying  at  this  time."  *Id.*

**Dr. Eapan** In January 2023, Dr. Sara Eapan completed a Medical Source Statement and opined that due to Brown's lumbar radiculopathy, Brown could sit for about 2 hours and stand/walk less than 2 hours in an 8-hour workday. (Tr. 1855-58) Dr. Eapan also opined that Brown would need to take unscheduled 2-hour rest breaks each day and would miss more than 4 days of work each month. *Id.*

**State Agency Review** On July 27, 2019, Dr. Diane Manos opined that Brown could perform work at a light level of exertion with standing/walking no more than 2 hours per day and no more than occasional push/pull with her bilateral lower extremities (Tr. 64-65). Psychologically, she found Brown had moderate limitations in her ability to carry out detailed instructions, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond to changes in the work setting (Tr. 66-67).

On reconsideration, Dr. Abraham Mikalov disagreed with Dr. Manos and opined that Brown could stand/walk up to 6 hours a day (Tr. 80-82).

## C.    Hearing Testimony

On January 17, 2023, ALJ Penny Loucas held a telephonic hearing on Brown's application. (Tr. 1546-72) Brown represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.*)  During the hearing, the ALJ asked Brown how she has been able to financially support herself as she has not worked since 2007. (Tr. 1556) Brown said she received government assistance and had an Aunt who issues her monthly checks. (*Id.*) Brown's attorney then examined her and Brown testified to the following:

- She believed she could not work since 2007 due to low back pain that makes activities like bathing, dressing, and getting out of bed difficult. She initially stated

that she has had multiple steroid injections and surgeries but later clarified she had not had any surgeries on her back. Her last injection prior to the hearing was August 19, 2022, and it did not provide any relief.  (Tr. 1556-59)

The ALJ then asked Brown why she continued to get injections if they provided no relief. (Tr. 1559) Brown stated that she wanted to see if they would make her feel better if she kept getting them and following her provider's care plan. (*Id.*) Brown shared that she had gotten back injections every six months since 2012 but they have not provided any relief. (Tr. 1560) Brown's attorney then resumed questioning and Brown testified:

- She has been to many different doctors. Her adult children and cousin help her perform daily chores. She does not drive, grocery shop, cook, or clean. She experiences pain sleeping, sitting, standing, and walking. She spends most of the day lying down. She can only sit with her feet flat on the ground for a couple of minutes. She uses a TENS unit 4-5 times a day for 30 minutes at a time but it provides no relief. She is not on any medications for pain and stated that every pain management doctor she currently sees does not prescribe her pain medication. She has not been prescribed pain medication since 2017 or 2018. She stopped seeing that doctor because he no longer took her insurance.

- She testified that she had other conditions that limited her ability to work: asthma, sleep apnea, bipolar disorder, PTSD, and depression. She stated she is low most days and is on medication but it is not helping and, her depression is worse since taking them. She has been seeing her primary doctor is Sara Eapan for over 15 years and believes Dr. Eapan has a good handle on her pain condition and limitations.

(Tr. 1560-66.)

VE Robert Breslin also testified at the hearing. (Tr. 1566-). The ALJ posed hypothetical scenarios to the VE about whether an individual of Brown's age and education could work and, if so, what types of jobs could they perform with the following theoretical limitations:

1. Never climb ladders, ropes, or scaffolds; can lift and carry 10 pounds frequently and up to 20 pounds occasionally; can frequently climb ramps and stairs; frequently balance, stoop, , kneel, crouch, and crawl; should avoid exposure to unprotected heights or exposure to dangerous, moving machinery; an understand, remember, and apply information to carry out simple instructions in a routine work environment with no piece-rate type production requirements; and can interact with others for brief work-related tasks. (Tr. 1566-67)

10

- The VE testified the individual could perform work as a cleaner, housekeeper; merchandise marker; and laundry work which were all "light" jobs. (Tr. 1567)

2. Same mental limitations as hypothetical #1 but with the following physical limitations: can stand or walk two hours; can occasionally use foot controls; never climb ladders, ropes, or scaffolds; can lift and carry 10 pounds frequently and up to 20 pounds occasionally; can occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; should avoid exposure to unprotected heights or exposure to dangerous, moving machinery. (Tr. 1567-68)
   - The VE testified that the jobs mentioned in hypothetical #1 would no longer be available due to the standing and walking limitation but the individual could perform work as a document preparer, an assembler, and surveillance system monitor—all sedentary jobs. (Tr. 1568)

Brown's counsel then asked if there would be any jobs for an individual who could not do work involving walking, standing, lifting, or carrying. (Tr. 1568) The VE replied "no" and stated that even sedentary jobs require some standing and walking. In response to counsel's questioning, the VE also testified that there would be no work for an individual with a combined 1 hour and 45 minutes of standing and walking and 2 hours of sitting in a workday. (Tr. 1569) The VE also testified that there would be no work for an individual who either is off-task 25% of the day or is absent from work 4 or more times per month, and that for the vast majority of jobs there is no lying down at work. (*Id.*)

### III.   STANDARD FOR DISABILITY

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010);  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe

11

impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant has not engaged in substantial gainful activity since August 22, 2018, the application date (20 CFR 416.971 et seq.).

2.   The claimant has the following severe impairments: degenerative disc disease of lumbar spine with radiculopathy and spondylosis; bipolar disorder with depression; anxiety disorder with panic; post-traumatic stress disorder (PTSD); hypertension; migraine; and degenerative changes of left knee (20 CFR 416.920(c)).

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 416.945) to perform light work as defined in 20 CFR 416.967(b), except : she can occasionally balance, stoop, kneel, crouch and crawl; can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds; cannot have concentrated exposure to vibration or high background noise; cannot have any exposure to hazards (defined as heights, machinery, commercial driving); and mentally, she can perform

12

      simple, routine tasks in a low stress environment (defined as no fast pace, assembly work, strict quotas or frequent duty changes) (20 CFR 416.969a).

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on October 13, 1975, and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant has a limited education (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969a).

10.      The claimant has not been under a disability, as defined in the Social Security Act, Since August 22, 2018, the date the application was filed (20 CFR 416.920(g)).

(Tr. 1579-1586)

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec*., 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).  Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v.Comm'r of Soc. Sec*., 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility

determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also His v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F.

14

Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996);

accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is

not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh*

*v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260

(E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D.Ohio July 9, 2010).

## VI.  ANALYSIS

Brown presents three assignments of error. First, she argues that the ALJ failed to comply

with this Court's remand order. Second, she argues that the ALJ failed to properly evaluate the

opinions of the treating and consulting sources in accordance with 20 CFR 416.920c. Third,

Brown argues that the ALJ failed to properly evaluate her pain. (Doc. No. 9 at 1)

**A.**     **District Court Remand & Assessment of the OT/L Milicia's Opinion**

In her first and second assignments of error, Brown presents overlapping arguments

related to the ALJ's handling of OT/L Milicia's 2018 Functional Capacity Evaluation ("FCE").

(Doc. No. 9 at 8-10; 16-17) As these arguments overlap, both will be addressed together.

### 1. Functional Capacity Evaluation

Brown attended a FCE on September 14, 2018, with Occupational Therapist Michael

Milicia. (Tr. 1367-69) OT/L Milicia noted that the purpose of the FCE was to assist in "making

recommendations regarding client's application for disability." (Tr. 1367) OT/L Milicia opined

that Brown had the ability to perform sedentary physical demands but asserted that her

"occupation base is significantly eroded" due to limited sit and stand abilities. (Tr. 1368)  He

noted that during the exam Brown sat for 70 minutes total and stood for a total of 33 minutes (19

minutes at one time). His opinion states that Brown is able to perform sitting for up to 8 hours but

also states she is unable to sit "at least 2 hours at one time." (Tr. 1368)  He states that based on his

15

observations and, "taking into account full time work," she can only stand up to 1 hour and 45 minutes in an 8-hour workday and only 19 minutes at one time before changing position. *Id.* He also opined that Brown could occasionally reach, perform fine coordination, gross coordination, and firm grasping, and walk; and that she could frequently pinch and perform simple grasping. (Tr. 1368) Milicia also stated:

> Consistency of Effort results obtained during testing indicate significant observational and evidence based inconsistencies resulting in self-limiting behavior and submaximal effort.
> Reliability of Pain results obtained during testing indicate pain could have been considered while making functional decisions.

(Tr. 1368)

### 2. 2020 ALJ Decision & District Court Remand Order

In an August 2020 administrative decision, ALJ Roscoe found OT/L Milicia's opinion was "unpersuasive" and provided the following explanation:

> Michael Milicia, OT/L opined the claimant can stand and less than hours and sit less For [*sic*] two hours in a workday and has limitations in manipulative and postural activities (Exhibit B8F). While Mr. Milicia's opinion is supported with his examination findings, he noted that the claimant's effort during his examination was inconsistent and suboptimal (Exhibit B8F/2). Accordingly, the undersigned finds his opinion unpersuasive.

(Tr. 1584) In July 2022, this Court remanded the Commissioner's decision and determined that the ALJ did not provided an "adequate explanation" for discounting Milicia's opinion:

> The Court finds the ALJ erred in his evaluation of OT/L Milicia's opinion. The ALJ discounted Milicia's opinion solely because "he noted that the claimant's effort during his examination was inconsistent and suboptimal." (*Id.*) However, immediately after noting inconsistencies and "submaximal effort," Milicia stated, "Reliability of Pain results obtained during testing indicate pain could have been considered while making functional decisions." (*Id.* at 1368.) The ALJ fails to address this statement in his opinion. In addition, the ALJ omitted any discussion of consistency in evaluating Milicia's opinion.[6] This is significant because, in Dr. Siosin's examination in June 2019, he found manual muscle testing was affected by pain and that Brown's left thigh was three centimeters smaller than her right. Again, nowhere in the ALJ's opinion does he note or address these findings. It is well established that the ALJ may not ignore or overlook contrary lines of

evidence. *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him.")). It is possible that proper consideration of these findings may have also impacted the ALJ's analysis of Dr. Siosin's opinion.

*Marcella J. Brown v. Cmms'r of Social* Security, Case No. 21-cv-01042. (Tr. 1591-1651).

On remand, ALJ Loucas again found OT/L Milicia's FCE opinion was not persuasive.

However, this time the ALJ provided a more detailed explanation:

> The undersigned is not persuaded by the statements and conclusions expressed by occupational therapist, Michael Milicia, OT, who performed a Physical Capacity Evaluation on September 14, 2018. (Ex. B8F). This case was remanded by the court stating the prior ALJ did not properly apply the Supportability and Consistency factors for medical opinions citing §404.1520 (Ex. B7A/5) In its remand order, the Appeals Council did not identify any particular errors committed by the prior ALJ that needed to be addressed, but instead, simply stated: "the Administrative Law Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (Ex. B8A/3). Based upon the below analysis of the Regulations, the undersigned is of the opinion that I am not required to provide a detailed analysis of the supportability and consistency of Mr. Milicia's statements because:
>
> > 1. He is not an acceptable medical source;
> > 2. His statements are not medical opinions per agency policy/ definition; and
> > 3. His statements are construed as rendering opinions on issues that are reserved to the Commissioner.
>
> The term "medical opinion" has a specific definition and legal import as it used in the Social Security disability process. In addition, the Regulations identify medical professionals who are qualified to provide a "medical opinion" and restrict the issuance of same to those medical professionals by identifying them as "acceptable medical sources." According to §404.1527 (a): *Medical opinions* are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairments(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairments(s), and your physical or mental restrictions." An *acceptable medical source* is either a medical or osteopathic doctor, a licensed psychologist, licensed optometrist, licensed podiatrist for impairments of the foot or ankle only, qualified speech-language pathologist, licensed audiologist, licensed advanced practice registered nurse for impairments within the licensed scope of practice, and licensed physician assistant for impairments within the scope of practice. §404.1502. An occupational therapist is not an acceptable medical source, therefore, the occupational therapist's statements are not entitled to any specific evidentiary weight nor any specific articulation because his

opinion is not a "medical opinion" from an "acceptable medical source" as those terms are defined in the Regulations.

 In addition, §404.1520b suggests that Mr. Milicia's statements may fall under the category of *Statements on issues reserved to the Commissioner*, and hence, is "evidence that is inherently neither valuable nor persuasive." According to §404.1520b(c) :

> *Evidence that is inherently neither valuable nor persuasive.* Paragraphs ( c) (1) through ( c)(3) apply in claims filed … on or after March 27, 2017. Because the evidenced listed in paragraphs ( c) (1) through ( c) (3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, *we will not provide any analysis about how we considered such evidence in our determination or decision, even under §404.1520c:*
> …
> *Statements on issues reserved to the Commissioner:* The statements listed in paragraphs ( c) (3)(i) through ( c) (3) (viii) of this section would direct our determination or decision that you are or are not disabled or blind within the meaning of the Act, but we are responsible for making the determination or decision about whether you are disabled or blind:
>
> > (i) Statements that you are or are not disabled, blind, *able to work, or able to perform regular or continuing work:*
> >
> > [Emphasis added by the ALJ]

Mr. Milicia's statements offer conclusions on the claimant's ability to work and her ability to perform regular or continuing work which are specifically legal issues reserved to the Commissioner as quoted above. Mr. Milicia stated: Ms. Brown demonstrated the ability to perform within the sedentary physical demand category based on the definitions developed by the US Department of Labor and outlined in the Dictionary of Occupational Titles. However, the unskilled sedentary occupational base is significantly eroded because she is unable to stand for 1 hour and 45 minutes and sit at least 2 hours at one time." (Ex. B8F/2) These statements are also beyond his expertise since he does not appear to have the education, training or experience to qualify him as an individual to opine about whether the claimant meets the DOT definition of sedentary exertion, let alone opine what her other physical or mental functional abilities or limitations are that would lead him to further opine that the unskilled occupational base is "significantly eroded." Determining whether particular functional abilities and limitations qualify the claimant for certain jobs or in particular certain DOT defined exertional categories are more appropriately provided by a vocational expert. Both vocational experts who testified in the claimant's two hearings have the specialized education, training, and experience regarding the definitions of all of the various exertional and non exertional demands of jobs or know the required skills and qualifications to perform specific jobs or have placed individuals in specific jobs, as well as, know how to identify the type and the number of available jobs which a hypothetical person could perform. Moreover, it is a legal and administrative issue of fact to determine what constitutes a "significantly eroded" number of jobs when determining

18

whether the Commissioner has met its burden at Step 5 of the sequential evaluation process. As the lawfully appointed representative of the Commissioner, it is the Administrative Law Judge who has the sole responsibility for determining the residual functional capacity of the claimant, whether she is able to work and whether she is able to perform regular and continuing work. Mr. Milicia's statements and conclusions are encroaching on those responsibilities.

Although the undersigned is not required to provide a detailed analysis of the supportability and consistency of Mr. Milicia's report, the undersigned notes his statements regarding the claimant's consistency of effort undermine significantly any of his conclusions regarding her physical abilities and is worth noting as a measure of evaluating the claimant's reliability and consistency regarding her report of symptoms and limitations. Mr. Milicia stated the claimant demonstrated what he characterized as "significant observational and evidence based inconsistencies" which resulted in him concluding the claimant had "self limiting behavior" and gave " sub-maximal effort." This militates significantly against the reliability of his own findings regarding her physical abilities because he predicated his conclusions and opinions on the claimant's "self-limiting behavior and sub-maximal effort" that he observed on the date of her testing. His statement is quoted below:

> Consistency of Effort: results obtained during testing indicate significant observational and evidence based inconsistencies resulting in self-limiting behavior and submaximal effort. Reliability of Pain results obtained during testing indicate pain could have been considered while making functional decisions.(Ex. B8F/2)

While the claimant was informed of her ability and responsibility to modify, limit, or refuse any part of the examination, she is still expected to give her full effort when completing an examination.

Mr. Milicia never stated that the claimant refused any part of the examination or that she had stopped when trying to complete any part of the physical testing due to a complaint of pain. He noted only that she did not put forth maximal effort at various times throughout the examination. Mr. Milicia did not provide a detailed explanation of what factors/ criteria he considered as satisfying the criteria for full time work. When offering his conclusions regarding sitting and standing abilities, he stated he observed the claimant engage in these activities, noted the amount of time he observed her and then "took into account full time work," to issue his conclusions on the maximum amount of time she could perform those physical functions. Thus, offering little by way of support for his conclusion that the claimant can sit at least 2 hours at one time and sit up to a full 8 hours total during a work day. He failed to provide any detailed findings to support his conclusion that the claimant should avoid work involving dynamic balancing, bending, crawling, repetitive kneeling, squatting and stair climbing. (Ex. B8F) Finally, his conclusions are not consistent with other medical providers' physical examination findings as noted in detail above and most recently, on July 7, 2022, that, despite pain symptoms and a positive straight leg test on the left, she had no lumbar tenderness, had

19

5/5 strength, normal sensation, negative clonus, and she was able to walk on her heels and toes as well as walk with a tandem gait (B14F/5).

(Tr. 1534-37)

### 3. Legal Standard

Since Brown's claim was filed after March 27, 2017, the Social Security Administration's new regulations ("Revised Regulations") for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Under the Revised Regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency;5 (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 416.920c(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(b)(2).

The Revised Regulations also changed the articulation required by ALJs in their consideration of medical opinions. The new articulation requirements are as follows:

(1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision

how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

(2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 416.920c(b)(1)-(2).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Ryan L.F. v. Comm'r of Soc. Sec.,* No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019)(quoting 20 C.F.R. §§ 404.1520c(a), (b)(1)). A reviewing court "evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Id.*

## 4. Analysis

On remand, ALJ Loucas asserted that she was not required to provide "a detailed analysis of the supportability and consistency of Mr. Milicia's statements because: (1) he is not an acceptable medical source; (2) his statements are not medical opinions per agency policy/ definition; and (3) his statements are construed as rendering opinions on issues that are reserved

21

to the Commissioner." (Tr. 1534) The ALJ's second finding is inaccurate. The ALJ was correct in stating that as an occupational therapist Mr. Milicia is not considered an "acceptable medical source" under the regulations. However, the ALJ erred in finding that Mr. Milicia's statement did not constitute a "medical opinion" because the ALJ relied on an outdated regulation to support her conclusion. The ALJ cited to §404.15279(a), which was relevant for claims prior to March 27, 2017. Since Brown's claim was filed after that date, the cited section does not apply. 20 C.F.R. § 404.1527 states, "For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply." §404.1520c no longer defines "medical opinion" as only from an "acceptable medical source."

The Commissioner admits that the ALJ erred. [Doc. No. 11 at 10 "[T]he ALJ erred inciting to a differing definition of 'medical opinion' inapplicable in this case (20 C.F.R. §§404.1527(a), 416.927(a)) (Tr. 1534)."] Nonetheless, the Commissioner asserts the ALJ ultimately complied with the current regulation for handling medical opinions by "detailing the unpersuasiveness of the opinion with reference to both supportability and consistency (Tr. 1534, 1536-37)." (Doc. No. 11 at 10) The Commissioner is correct in that, as long as the ALJ conducted a sufficient supportability and consistency analysis of the opinion than, her statements about not having to do so are harmless because she still treated OT/L Milicia's FCE as a medical opinion.[5]

---

[5] To the extent the ALJ's statements can be construed as a procedural error, any such error was harmless because claimant was not at all prejudiced and was not deprived of a substantial right solely by the ALJ's inaccuracy because the ALJ still addressed supportability and consistency. *Carolyn W. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00423, 2022 WL 4244214, at *4 (S.D. Ohio Sept. 15, 2022)("Courts generally will excuse an ALJ's procedural violation as harmless error unless it prejudices the claimant on the merits or deprives him of substantial rights.") (citing *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2007). Further, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir.2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989). See also *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir.2004) (When "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.") (quoting *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766, n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) ).

**Supportability**

The ALJ articulated that she found OT/L Milicia's opinion was unsupported because (a) he opined on issues reserved to the Commissioner without specialized knowledge or training; (b) he did not provide details to support his conclusions; (c) Brown's "sub-maximal effort" undercut Mr. Milicia's findings.

First, the ALJ found some of OT/L Milicia's opinions unsupported because he lacked expertise to opine on the issues and the issues were ones reserved for the Commissioner. For instance, OT/L Milicia determined Brown could perform "sedentary" work as defined by the Department of Labor but stated that her limitations significantly eroded the occupational base. "Opinions on issues reserved to the Commissioner,' namely an assessment of the ability to work" and, therefore, the ALJ need not give special significance to such a statement. *Andres v. Commissioner*, 733 F. App'x 241, 244 (6th Cir 2018) (citations and quotations omitted); *see also* 20 C.F.R. § 416.927(d)(1)(Opinions "that are dispositive of a case; *i.e.,* that would direct the determination or decision of disability" are not given "any special significance.")*; Quisenberry v. Commissioner*, 757 F. App'x 422, 431 (6th Cir. 2018) ("[N]o special significance will be given to source of an opinion—such as whether a claimant is disabled or unable to work—reserved to the Commissioner[.]"); *Bass v. McMahon,* 499 F.3d 506, 511 (6th Cir. 2007)(finding ALJ properly rejected conclusion that claimants back pain was "disabling."). Thus, it was appropriate for the ALJ to reject statements on issues reserved to the Commissioner.

In addition, the ALJ found Brown's lack of effort lessened support for OT/L Milicia's opinion. The ALJ found that though Mr. Milicia stated that pain "could have been considered" as a reason for the lack of effort, the rest of Milcia's opinion does not provide support for this statement as he "never stated that the claimant refused any part of the examination or that she had

stopped when trying to complete any part of the physical testing due to a complaint of pain…[h]e noted only that she did not put forth maximal effort at various times throughout the examination." (Tr. 1536); *See also* 20 C.F.R. § 404.1520c ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.") Courts in this circuit have found that a notation indicating a claimant gave a "submaximal effort" is a proper reason for the ALJ to discount or reject a medical opinion. *See e.g., McCoy v. Astrue*, No. 3:10-CV-209, 2012 WL 12489, at *9 (E.D. Tenn. Jan. 3, 2012) (finding "submaximal effort given by plaintiff during testing...whether or not plaintiff was intentionally malingering" provided a "valid basis" for rejecting medical opinion);*Ward v. Astrue*, No. 1:09-CV-00500, 2010 WL 420025, at *9 (N.D. Ohio Jan. 29, 2010); *O'Neil v. Comm'r of Soc. Sec.,* No. 08-13637, 2009 WL 3190364, at *4 (E.D. Mich. Sept. 30, 2009). Though Brown disputes the ALJ's interpretation of OT/L Milicia's notation, the ALJ's interpretation is not unreasonable and is within the zone of choice. As this Court explained in *Ward*:

> Ward argues that the ALJ should have interpreted the "submaximal effort" statement differently. Ward apparently misconstrues the substantial evidence standard, which "presupposes that there is a zone of choice within which the [ALJ] can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Williamson v. Apfel*, 1998 U.S.App. LEXIS 30010 at *13 (6th Cir.1998) *quoting Mullen,* 800 F.2d at 545. Here, simply because Ward proffers a different interpretation of Wolfe's opinion, the ALJ's conclusion is not thereby rendered unreasonable or untenable.

*Ward*, 2010 WL 420025 at *9; *See also O'Neil*, 2009 WL 3190364 at *4 ("The Court may determine only whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied, and must affirm an ALJ's decision if the findings and

inferences reasonably drawn from the record are supported by substantial evidence, even if the record could support a different conclusion. *See Key,* 109 F.3d at 273; *Buxton,* 246 F.3d at 772.")

In addition, the ALJ found that OT/L Milicia's opinion lacked support because it failed to provide detailed findings in support of several conclusions. For example, the FCE contains no explanation or testing to explain OT/L Milicia's opinion that Brown "should avoid work involving dynamic balancing, bending, crawling, repetitive kneeling, squatting and stair climbing. (Ex. B8F)." *Id.* And the ALJ found OT/L Milicia's sitting and standing limitations unsupported because Mr. Milicia indicated his opinion on these issues was based on his observations while taking into account full time work but did not "provide a detailed explanation of what factors/criteria he considered as satisfying the criteria for full time work." (Tr. 1536)

In summation, the ALJ explained that she found OT/L Milicia's opinion lacked support because he opined on issues reserved to the Commissioner; Brown's "submaximal" effort undercut his findings, and he failed to provide supportive details for his conclusions. Brown's brief fails to address the ALJ's supportability rationale. Accordingly, Brown has not identified any errors therein and the ALJ's finding is supported by substantial evidence.

Consistency

In addition to supportability, the ALJ found Mr. Milicia's opinion was inconsistent with other evidence including longitudinal objective evidence and other medical opinions the ALJ found were persuasive. (Tr. 1536-37)

The regulations provide "[t]he more consistent a medical opinion[ ] ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[ ] ... will be." 20 C.F.R. § 404.1520c(c)(2). Here, the ALJ found Mr. Milicia's, "conclusions are not consistent with other medical providers' physical examination findings as

25

noted in detail above and most recently, on July 7, 2022, that, despite pain symptoms and a positive straight leg test on the left, she had no lumbar tenderness, had 5/5 strength, normal sensation, negative clonus, and she was able to walk on her heels and toes as well as walk with a tandem gait (B14F/5)." (Tr. 1537) In finding that Mr. Milicia's exam conflicted with other evidence, the ALJ pointed to Dr. Chernoff's July 2022 examination as an example and other "physical examination findings as detailed above" in the decision. The ALJ's opinion must be viewed as a whole and the ALJ referred to other findings "detailed above."[6]

Looking at the opinion as a whole, the ALJ's opinion outlines the physical exam findings that contradicted Mr. Milicia's opinion. In describing the physical examination evidence, the ALJ stated:

> The claimant testified that her physical and mental symptoms significantly limit her ability to tend to her activities of daily living; however, the medical evidence does not show that she is as limited as she alleges (Exhibits B5F; B6F; B7F; B9F; B11F, B14F ). Instead, the undersigned finds that her pain complaints are out of proportion to and unsupported by the objective medical evidence. Her lumbar CT scan showed small bulges without stenosis or compression, and her neurological findings were normal (Exhibits B5F/2, 3; B6F/15; B7F/28, 88; B11F/23, 24 B14F ). Examinations by two specialists, Dr. Eubanks in 2019 (Ex. B6F) and Dr. Chernoff in 2022 (Ex. B14F) made the same findings of 5/5 muscle strength in hip flexors, abductors and all muscle groups, no gait abnormalities, no focal neurological deficits and normal sensation.

(Tr. 1530-31)

---

[6] *See e.g., Crum v. Comm'r of Soc. Sec.,* 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time ...it suffices that she listed them elsewhere in her opinion."); *White v. Comm'r of Soc. Sec.,* No. 1:21-CV-00864-JDG, 2022 WL 2105977, at *11 (N.D. Ohio June 10, 2022) ("Reading the opinion as a whole, it is evident to the Court the ALJ rejected Dr. Saghafi's lifting and standing/walking limitations on the basis of conflicting evidence..."); *Taylor v. Kijakazi,* No. 1:20-CV-01121, 2021 WL 4477865, at *9 (N.D. Ohio Sept. 30, 2021) (upholding ALJ's analysis of medical opinion by looking at record as a whole); *Alexander v. Kijakazi,* No. 1:20-CV-01549, 2021 WL 4459700, at *12 (N.D. Ohio Sept. 29, 2021) ("[T]he decision as a whole sufficiently explains why nurse Murphy's opinions were found to be lacking in consistency."); *Dailey v. Colvin,* No. 1:13-CV-01755, 2014 WL 2743204, at *8, 2014 U.S. Dist. LEXIS 82267, at *23 (N.D. Ohio June 17, 2014) [noting "[t]he fact that the ALJ did not analyze the medical evidence for a second time (or refer to her previous analysis) when rejecting [the treating physician]'s opinion does not necessitate remand of Plaintiff's case."].

The ALJ also expanded upon her discussion of specialists Eubanks and Chernoff throughout her opinion. With regard to Dr. Eubanks August 2019 examination, the ALJ noted that on examination that Dr. Eubanks found:

> no acute distress, normal psychological affect; nondistended abdomen; and non labored breathing. Pertinent musculoskeletal and neurological findings were noted as follows: Musculoskeletal: [No pain with range of motion of the hips bilaterally] Neurologic [5 out of 5 strength in lower extremities] [negative straight leg raise] [no hyperreflexia] [no clonus]

*Id.* Dr. Eubanks reviewed the results of an earlier CT scan that noted disc bulges at L4-5 and L5-S1.  *Id.*  Nonetheless, Dr. Eubanks concluded that Brown did not need surgery, and instead recommended conservative treatment. *Id.* As the ALJ explained, "Dr. Eubanks did not suggest the claimant needed surgery. He documented unequivocally that he discussed with her, at length, that her condition is usually favorable over time when treated with multi-modal, focused rehabilitation. He encouraged non-operative care, and the claimant was in agreement with his plan." *Id.*  The ALJ also highlighted that Dr. Eubanks was Chief of Spine Surgery at University Hospitals Ahuja Medical Center:

> As the head of the Department of Spine surgery, the undersigned finds his assessment and recommendations more reliable and more consistent with subsequent recommendations and treatment she received which was all non-operative in nature.

(Tr. 774-81, 1525) Thus, the ALJ acknowledged that Dr. Eubank's examination and determinations conflicted with OT/L Milicia's opinion, but determined that the Chief of Spine Surgery's opinion was more persuasive than Mr. Milicia, an Occupational Therapist. The ALJ also determined Dr. Eubanks recommendation against surgery and for conservative treatment was consistent with the record as a whole. Despite the ALJ's reliance on Dr. Eubank's exam as

conflicting with Mr. Milicia's opinion, Brown's brief ignores Dr. Eubanks except for to state that he diagnosed her with chronic bilateral low back pain.[7] (Doc. No. 9 at 14 citing Tr. 777)

The ALJ also found parts of Dr. Chernoff's 2022 exam conflicted with Mr. Milicia's opinion. Dr. Chernoff's examination revealed some spinal tenderness, a positive straight leg raise test on the left, and a positive seated slump test. (Tr. 1808) The exam also revealed intact strength and sensation; normal gait; an ability to heel toe walk, and a negative Kemp test. (Tr. 1808) After examination and documentation of Brown's complaints of debilitating pain, Dr. Chernoff recommended conservative treatment (weight loss, physical therapy, steroid injection, and use of a TENS unit). (Tr. 1804) The ALJ also noted that despite not pursuing the conservative treatment recommended by Dr. Eubanks in 2019, by 2022 Brown still retained full muscle strength all muscle groups, was able to heel toe and tandem walk, and had no neurological deficits. (Tr. 1531) Brown again fails to discuss the evidence that the ALJ relied upon.[8]

State agency physician Abraham Mikalov, M.D.'s opinion also conflicted with Mr. Milicia's opinion. Dr. Mikalov opined that Brown could perform light work, including standing/walking about 6 hours in a day, with some additional limitations. (Tr. 1532) The ALJ found Dr. Mikalov's opinion was, "consistent with the other evidence in the record because even though she had tenderness and decreased range of motion at times, the majority of the findings

---

[7] Brown does mentions Dr. Eubanks in her argument that the ALJ erred in assessing Dr. Eapan's opinion. Brown states, "As support for her erroneous conclusion, the ALJ cited to 2019 examinations as support for this opinion proffered in 2023." (Doc. No. 9 at 12) This argument was not addressed to Mr. Milicia's opinion and does not apply here because Mr. Milicia's opinion was issued in 2018 and Dr. Eubanks exam was in 2019. The argument will be addressed in the section on Dr. Eapan's opinion later in this decision.

[8] Again, Brown only mentions Dr. Chernoff in her discussion of Dr. Eapan's opinion stating that her reported pain level of 6 was supported by examination findings of tenderness to the lumbar spinous and paraspinal muscles along with positive straight leg testing on the left and seated slump test positive on the left. (Doc. No. 9 at 12 citing Tr. 1808) Brown asserts that the "documented pain intensity level supported and was consistent with the opinion of Dr. Eapen that Plaintiff's pain at best was a level 6 (Tr. 1855)." This does not address Mr. Milcia's opinion or the ALJ's supportability and consistency findings. The ALJ did not ignore the tenderness and positive straight leg and seated slump tests on the left but found that normal gait, strength, and sensation and Dr. Chernoff's conservative treatment recommendations conflicted with Mr. Milicia's severe limitations. Again, Brown does not address this in relation to the ALJ's handling of Mr. Milicia's opinion.

also documented no joint inflammation or deformity, no neurological deficits, and 5/5 muscle strength in upper and lower extremities. (B5F/2, and 3, B6F/15, B7F/28, and 88, and B11F/23, and 24)." (Tr. 1532) An "ALJ is entitled to give preference to doctor who had access to the entire medical record over the opinion of a doctor who worked only from her personal examination." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *See also  Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *McCoy v. Astrue*, No. 3:10-CV-209, 2012 WL 12489, at *9 (E.D. Tenn. Jan. 3, 2012) ("An ALJ may credit the views of a nonexamining physician over those of treating and examining doctors where the nonexaminer's opinion is better supported by the objective evidence and more consistent with the record as a whole." (citing *Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 652 (6th Cir.2006)).

Thus, the ALJ found that Mr. Milicia's opinion was inconsistent with the longitudinal objective evidence, the consistent conservative treatment recommendations,[9] the examinations of Drs. Chernoff and Eubanks, and Dr. Mikalov's opinion. Brown does not demonstrate that the ALJ erred in her explanation or assessment of the conflicting evidence. Instead, Brown argues that Mr. Milicia's opinion was consistent with other evidence, such as the consultative evaluation of Dr. Eugene Sioson—an opinion the ALJ found unpersuasive. (Doc. No. 9 at 17) Thus, Brown is essentially challenging the *weight* of the evidence which is something this Court cannot consider. *Delbo v. Comm'r of Soc. Sec*., No. 1:21-CV-01522, 2022 WL 2530709, at *13 (N.D. Ohio Jul. 7, 2022) ("The fact that [plaintiff] would weigh the evidence differently or that there is record evidence that may support a more restrictive RFC do not serve as grounds for reversal."); *Harrod*

---

[9] *Blaim v. Comm'r of Soc. Sec*., 595 F. App'x 496, 499 (6th Cir. 2014) ("the mildness of [claimant's] treatment-mostly pain medication, weight loss, and exercise-suggested that his ailments were comparatively mild."); *see also Masters v. Comm'r of Soc. Sec*., 707 Fed.Appx. 374, 380 (6th Cir. 2017) (finding the ALJ properly considered multiple factors, including conservative treatment, when assessing the medical evidence); *Lester v. Comm'r of Soc. Sec*., 596 Fed.Appx. 387, 389 (6th Cir. 2015) (considering conservative treatment when weighing medical source statements).

*v. Comm'r of Soc. Sec.,* No. 3:17CV1839, 2018 WL 386987, at *17 (N.D. Ohio Aug. 15, 2018)

("Although Plaintiff clearly believes the ALJ should have assessed more restrictive limitations

based on her interpretation of the medical record, that belief does not establish a violation of the

substantial evidence standard."); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) ("Even if the

evidence could also support another conclusion, the decision of the [ALJ] must stand if the

evidence could reasonably support the conclusion."). The Commissioner enjoys a "zone of

choice" within which to decide cases without risking being second-guessed by a court. *Mullen v.*

*Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.

1984)).

In summation, Brown fails to show that the ALJ erred in instituting this Court's remand

order or in her articulation of the supportability and consistency of OT/L Milicia's opinion.

**B.      Dr. Sara Eapan**

Brown also argues that the ALJ erred in her analysis of the opinion of Dr. Eapan, Brown's

primary care physician. (Doc. No. 9 at 11-15) Dr. Eapan completed a Medical Source Statement

(MSS) in January 2023. (Tr. 1855-58) In the MSS, Dr. Eapan opined that Brown could sit for 15

minutes, stand for 1 minute, stand/walk less than 2 hours per workday, sit for 2 hours, would need

to take a break every 2 hours to lay down for 2 hours due to back and leg pain, could frequently

lift less than 10 pounds, would be off task for at least 25% of the day, and would miss more than 4

days per month. *Id.*

The ALJ found Dr. Eapan's opinion was not persuasive and gave the following

explanation for her finding:

> [Dr. Eapan] opined that the claimant suffers from lumbar radiculopathy. Symptoms were
> identified as "low back pain going down left leg." As for functional abilities, Dr. Eapen
> opined the claimant can frequently lift/carry less than 10 pounds, stand for 1 hour at a
> time, sit for 15 minutes at a time, stand/walk for less than 2 hours and sit for about 2 hours

total. Claimant has no limitations with regards to reaching, handling, or fingering, would be off-task 25% or more and absent more than 4 days per month, and is incapable of even low stress work. She also opined the claimant would need unscheduled breaks every two hours and each break would last about two hours. She initially marked "No" for the claimant's use of a cane, but then added the notation "uses walker sometimes" due to pain. Dr. Eapen stated the claimant's "pain is constant 8/10" and she had a positive straight leg raise test that elicited pain at 5 degrees on both sides. She also noted the claimant sees Dr. Kalil for injections with "some benefit with pain decreasing to 6/10."

The undersigned does not find fully persuasive Dr. Eapen's opinions for several reasons. First, she failed to provide adequate support for the check box form that was used to express her opinion. The sparse notes she provided did not contain any specific dates that she conducted examinations upon which she predicated her opinion. For example, while she said the claimant had a positive straight leg raise test at five degrees bilaterally, she failed to identify when this finding was made. Her record contains a positive straight leg raise test at 20 degrees at one appointment, but not 5 degrees. (Ex. 6F/10) Similarly, in response to question #10, she failed to provide any appropriate identification of limitations or symptoms but only stated "sees psychiatrist depression."

Second, her opinions were not consistent internally or with other evidence. For example, she stated the claimant had pain that was "constant at 8/10" but failed to document on what dates those findings were made. While her treatment notes document the claimant reporting pain rated as 8/10, there is no indication that this pain was "constant" especially, considering Dr. Eapen's other statement noting that injections helped reduce her pain to 6/10. Claimant reported to another provider on July 7, 2022, her pain was 6 out of 10 on the pain scale (B14F/5). Another example on internal inconsistency relates to depression. Dr. Eapen stated the claimant's depression contributes to her condition, but her own treatment notes also repeatedly document that the claimant is alert and in no acute distress with having at the most only mild depression upon physical examinations throughout the years (B3F, B9F, and B13F). Third, her opinion is not consistent with the other evidence in the record which includes the treatment notes from other medical providers. For example, on June 26, 2019 when claimant was seen in the emergency room for chest pain. Her examinations findings included range of motion without pain, normal sensation and normal 5/5 strength. No mention of lumbar pain being 8/10 or constant. (Ex. B7/139) On August 16, 2019, Dr. Eubanks, Chief of Spine Surgery at UH Ahuja Medical Center, saw the claimant for low back pain complaints and noted she had "no specific lumbar radiculopathy," and "some mild radiation into her hamstrings." (Ex. B6F/4) His examination findings noted that she was well-appearing, in no acute distress, "no pain with range of motion of the hips bilaterally;" 5/5 strength in the bilateral lower extremities, a negative straight leg raise, no hyperreflexia, and no clonus (B6F/6).

(Tr. 1537-38)

Brown argues that most of the ALJ's cited treatment notes are from 2019 and suggests that those notes cannot contradict Eapan's 2023 opinion. (Doc. No. 9 at 12) However, Brown provides

no support for her argument. She also takes issue with the ALJ's reliance on the more recent

(2022) evaluation by Dr. Khalil wherein she reported a 6/10 pain level. *Id.* citing Tr. 1808. Brown

argues that the 6/10 pain reporting was "consistent with the opinion of Dr. Eapan that [Brown's]

pain at best was a level 6 (Tr. 1855) *Id.* However, the ALJ addressed this and found Dr. Eapan's

opinion internally inconsistent because she states Brown's pain is "constant 8/10" but later states

Brown has received some benefit from Dr. Khalil "with pain decreasing to 6/10." (Tr. 1855) The

ALJ's finding that these statements are inconsistent is not unreasonable.

       The ALJ also found Dr. Eapan's opinion lacked support because it was a check-box

opinion with few explanations. The Sixth Circuit Court of Appeals has observed that check-box

opinions, unaccompanied by explanation, are " 'weak evidence at best' and meets our patently

deficient standard." *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 475 (6th Cir. 2016)

(citing Friend v. Comm'r of Soc. Sec., 375 Fed. App'x 543, 551 (6th Cir. 2010)); *accord Shepard*

*v. Comm'r of Soc. Sec.*, 705 Fed. App'x 435, 441 (6th Cir. 2017) (finding that a doctor's

"conclusory opinion, which provided no supporting findings or records and consisted largely of

one word answers, circles, and check-marks" was suspect under *Hernandez*); *see also Toll v.*

*Comm'r of Soc. Sec.,* No. 1:16cv705, 2017 WL 1017821, at *4 (W.D. Mich. Mar. 16, 2017)

(finding that "even if the ALJ failed to provide good reasons" for assigning little weight to a

treating source's opinion, such error was harmless where the opinion consisted of a check-box

worksheet lacking any explanation beyond a diagnosis) Putting aside the pain rating

inconsistency, the only explanation for Dr. Eapan's significant limitations is "back pain" without

any further explanation or support. *See Harrier v. Berryhill*, No. 1:17-CV-01163-JAY, 2019 WL

12758078, at *5 (W.D. Tenn. Mar. 21, 2019) ("A lack of supporting objective evidence is a

significant factor that the ALJ may consider when evaluating any medical opinion."); *McLearren*

*v. Astrue*, No. 2:06-0071, 2009 WL 703294, at *10 (M.D. Tenn. Mar. 16, 2009) (found substantial evidence to support discounting opinion, including "lack of objective medical evidence in [provider's] treatment notes to support his conclusion.") The ALJ also found Dr. Eapan's treatment notes failed to support the significant limitations. For example, Dr. Eapan opined that Brown was "incapable of even 'low stress' work" but as the ALJ pointed out, Dr. Eapan's treatment notes document "at most only mild depression" throughout the years. (Tr. 1537-38) Brown does not address either of these findings. "Lack of supportability alone is a basis for finding a source opinion to be unpersuasive." *Haney v. Comm'r of Soc. Sec.,* No. 5:22-CV-651, 2023 WL 5043248, at *7 (N.D. Ohio June 16, 2023)

In addition to supportability, the ALJ found Dr. Eapan's opinion was inconsistent with other evidence. The ALJ pointed to the 2019 assessment of Dr. Eubanks. Though the opinion was from 2019, the ALJ emphasized he is Chief of Spine Surgery and found "no specific lumbar radiculopathy," and "some mild radiation into her hamstrings." (Tr. 1538) Elsewhere in the opinion the ALJ noted the 2019 exam showed full strength and that Dr. Eubanks prescribed only conservative care. (Tr. 774-81, 1525) Though Brown argues that the opinion has less value because it was four years prior to Dr. Eapan's opinion, no other physician has recommended anything beyond conservative treatment since that time. Thus, the ALJ's determination that Dr. Eubanks' findings were more consistent with other evidence is true in relation to the longitudinal record of conservative treatment and lack of surgical necessity.  The ALJ also noted that, despite not following Dr. Eubanks recommendation to pursue physical therapy, Brown retained 5/5 muscle strength, was able to walk on heels/toes and tandem, and had no neurological deficits at a visit two years later. (Tr. 1531) The ALJ believed this supported Dr. Eubanks finding that her condition was favorable and pain disability would not increase over time. *Id.* The ALJ also noted

various places throughout the record where Brown retained full strength or normal range of motion.[10] The ALJ also pointed to a June 2019 ER visit for chest pain that included a physical exam noting normal musculoskeletal and neurological examination results relative to Brown's back and lower extremities. (Tr.  963) Although some back pain was noted, there was no mention of severe 8/10 pain or limitations due to pain in examination. (Tr. 956, 1537) Further, the ALJ noted examinations "mostly document a normal gait. (Exs. B7F/ 22, 82, 127 and Ex. B11F/ 13, 34, 69 "does not have an impaired gait;" B7F/ 59 and B11F/ 38, "steady gait;" Ex. B7F/ 188 "negative for gait abnormality;" B15F/ 36 and 40, B14F/1 "able to walk on heels and toes and tandem gait.") (Tr. 1528) Thus substantial evidence supports the ALJ's determination that Dr. Eapan's opinion was inconsistent with other evidence.

Brown lists a host of evidence she believes is consistent with Dr. Eapan's opinion and argues the evidence "was not adequately addressed by the ALJ." (Doc. No. 9 at 13-14)  It is notable, that Brown does not argue that the ALJ ignored evidence and the ALJ did not. Rather, Brown takes issue with the weight the ALJ assigned to certain evidence.[11] For example, Brown points to imaging evidence that she believes is consistent with Dr. Eapan's opinion. First, the Court notes that while asserting it was improper for the ALJ to rely on a 2019 exam to contradict Dr. Eapan's opinion, Brown points to imaging from 2012 and 2013 to support Dr. Eapan's 2023

---

[10] The ALJ cited to the following: August 2018 exam normal strength, gait, and range of motion (Tr. 1522); December 2018 exam normal range of motion, gait, strength (Tr. 785, 1528); August 2019 (5/5 strength, no pain with range of motion) (Tr. 1525); October 2019 ER visit (normal physical exam, aside from tenderness) (Tr. 852, 1528); December 2019 exam (tenderness and positive SLR but normal range of motion and ambulation and no sensory deficits) (Tr. 785, 1532); July 2022 exam (full strength, normal gait and heel toe/walk) (Tr. 1532, 1804)

[11] *Delbo v. Comm'r of Soc. Sec.*, No. 1:21-CV-01522, 2022 WL 2530709, at *13 (N.D. Ohio Jul. 7, 2022) ("The fact that [plaintiff] would weigh the evidence differently or that there is record evidence that may support a more restrictive RFC do not serve as grounds for reversal."); *Harrod v. Comm'r of Soc. Sec.*, No. 3:17CV1839, 2018 WL 386987, at *17 (N.D. Ohio Aug. 15, 2018) ("Although Plaintiff clearly believes the ALJ should have assessed more restrictive limitations based on her interpretation of the medical record, that belief does not establish a violation of the substantial evidence standard."); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion."). The Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)).

opinion. (Doc. No. 9 at 13) The other imaging Brown highlights are a 2019 CT scan and a 2018 MRI. (Doc. No. 9 at 13 citing Tr. 776, 798) The ALJ addressed these items. Brown argues the 2019 CT scan resulted in Dr. Eubanks diagnosing her with chronic low back pain. However, a diagnosis of an impairment says nothing about the extent of limitations the impairment imposes. *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir.1988) (mere diagnosis of an impairment says nothing about the extent of limitation that the impairment imposes). Moreover, Brown disregards the fact that after reviewing the CT scan Dr. Eubanks stated Brown's condition did not require surgery, would likely improve, and recommended conservative treatment (i.e., physical therapy). (Tr. 777) Similarly, the 2018 MRI Brown points to found only "mild" disc bulges and was also prior to Dr. Eubanks exam. (Tr. 798) Thus, Brown fails to show that ALJ's determination that Brown only had "mild" imaging findings is unreasonable.

Brown's arguments are a clear attempt to reweigh evidence, which this Court cannot do. Brown fails to show that the ALJ erred in assessing Dr. Eapan's opinion and the ALJ's findings are supported by substantial evidence.

## C.    Dr. Eugene Sioson

Brown next argues that the ALJ erred in her evaluation of consultative examiner, Dr. Eugene Sioson. (Doc. No. 9 at 15-16) Dr. Sioson met with Brown on June 26, 2019, for a disability evaluation. (Tr. 766-70) Brown complained of back pain, chest pain, hypertension, and a mental disorder. (Tr. 766) She told Dr. Sioson that she has been unable to work since 2007 due to her medical problems. *Id.* On examination, Brown walked with a limp; declined to do heel/toe walk or to squat due to her back pains; and could not get up on the exam table. *Id.* It was noted that Brown had a limited range of motion in her shoulders due to pain in her back. *Id.* He stated she appeared in pain but had no swelling or sensory deficits. *Id,* Dr. Sioson diagnosed severe back

pain with no radiculopathy or inflammation; hypertension; and "mental disorder." *Id.* Dr. Sioson concluded that "if on considers and accepts her pain and above findings" she would not be able to do any work-related activities involving walking, standing, lifting and carrying at this time." *Id.*

The ALJ explained why she gave less weight to Dr. Siosin's evaluation. Dr. Sioson qualified his opinion with, "If one considers and accepts [Brown's] pain." (Tr. 1533) The ALJ found this qualification suggested that Dr. Sioson may not have "accept[ed] fully and without question the claimant's report of pain and the resulting limitations." *Id.* And the ALJ found the qualification suggested that Dr. Sioson's opinion was largely reliant on Brown's subjective symptoms and, therefore, lacking support. (Tr. 1533) Though Brown disputes the ALJ's interpretation of the notation, the ALJ's interpretation is not unreasonable and is within the zone of choice. *Ward*, 2010 WL 420025 at *9 (Finding ALJ's interpretation of a doctor's qualifying statement was not unreasonable and within the zone of choice.)

In addition, the Sixth Circuit has found that an ALJ properly discounts a medical opinion where it is based on subjective complaints. *Remias v. Comm'r of Soc. Sec.,* 690 F. App'x 356, 357 (6th Cir. 2017) (Finding the ALJ "reasonably discounted" a medical opinion based, in part, on the finding that the "proposed functional limitations were based largely on [claimant's] subjective complaints."); *Keeler v. Comm'r of Soc. Sec.*, 511 Fed.Appx. 472, 473 (6th Cir.2013) (finding substantial evidence supported the ALJ's decision not to give controlling weight to a physician's opinion because it among other reasons, it appeared to be based primarily on the claimant's subjective complaints.); *see also Harrier v. Berryhill,* No. 1:17-CV-01163-JAY, 2019 WL 12758078, at *5 (W.D. Tenn. Mar. 21, 2019) ("A lack of supporting objective evidence is a significant factor that the ALJ may consider when evaluating any medical opinion."); *McLearren v. Astrue,* No. 2:06-0071, 2009 WL 703294, at *10 (M.D. Tenn. Mar. 16, 2009) (found substantial

evidence to support discounting opinion, including "lack of objective medical evidence in [provider's] treatment notes to support his conclusion.") Here the ALJ noted that Dr. Sioson found the manual muscle test was "affected by pain" but "did not find any muscle spasm, spasticity, or clonus." (Tr. 1533) The exam also revealed full strength in knees and foot muscles, and a 3/5 in hip flexor strength. Since the objective portions of the examination that were completed failed to support Dr. Sioson's opinion, the ALJ determined that Dr. Sioson, "accepted fully the claimant's subjectively imposed limitations for her stated reason of pain when he examined her." *Id.* It was reasonable for the ALJ to find that Dr. Sioson's limitations appeared to be based largely on Brown's subjective complaints and to discount the opinion as lacking support for that reason and Dr. Sioson's qualified finding.

The ALJ also found Dr. Sioson's opinion conflicted with other evidence, including evidence discussed in prior sections of this recommendation and with treatment notes from an ER visit on the same day as Brown's appointment with Dr. Sioson. The ALJ stated:

> Recall that around 5:00 pm of June 26, 2019, the claimant went to the emergency room with complaints of chest wall pain. Pertinent notes contradict her presentation with Dr. Siosin: she was alert, well appearing and in no apparent distress. She denied dyspnea, wheezing and headaches. There was no mention of her being in extreme pain that she could not get on the exam table. Her musculoskeletal findings included normal appearing spine, unlimited range of motion, no muscle or joint tenderness and reproducible chest wall pain. She had no motor or sensory deficits. (Ex. B7F/ 139)

(Tr. 1534) The ALJ also explained:

> The claimant's presentation on these two occasions occurring on the same day are troubling because she presented so vastly different at her consultative examination than she did for her emergency room visit. Her presentation, examination and history were different between the two as well as between the information she provided in her function report and to her primary care doctor. Those inconsistencies include; her report to Dr. Siosin of shortness of breath every day and waking up with shortness of breath; headaches 2 times a day lasting all day; walked with a slight limp, could not get up on the exam table; report of pain was 9/10 and was the reason for reduced manual muscle testing. Yet, in the ER she denied weakness and dyspnea. She was able to get on the examination table,

> her lungs were clear, and her spinal examination was normal with no limit in the range of motion, and no muscle or joint tenderness. Chest wall pain was reproducible.

(Tr. 1524)

Brown's argument that the ALJ erred in addressing Dr. Sioson's opinion because the ER visit also noted Brown was positive for back pain is unconvincing. (Doc. No. 9 at 16) During the examination with Dr. Sioson, Brown was unable to get up on an exam table and was limping. However, no similar findings were noted in any of the ER notes despite that the ER visit occurred on the same day as Dr. Sioson's exam. However, the ALJ did not only rely on the ER visit. The ALJ also found Dr. Sioson's one-time visit conflicted with other evidence in the record. The ALJ stated:

> Other physical examination findings indicated she had good strength and normal sensory and motor function (B5F/2, and 3, B6F/15, B7F/28, and 88, B11F/23, and 24, and B14F). The CT scan of her lumbar spine showed only small bulges without stenosis or compression, and neurological findings were normal (Exhibits B5F/2, and 3, B6F/15, B7F/28, and 88, and B11F/23, and 24; B7F/ 139 B6F/6 and B14F). The majority of the findings also documented no joint inflammation or deformity, no neurological deficits, and 5/5 muscle strength in upper and lower extremities. (B5F/2, and 3, B6F/15, B7F/28, and 88, and B11F/23, and 24).  Finally, Dr. Sioson's opinion is not consistent with the opinion of Dr. Mikalov (Ex. 4A) For these reasons, Dr. Sioson's opinion is not persuasive.

(Tr. 1534) Brown fails to address these additional explanations supplied by the ALJ. Thus, Brown has not shown the ALJ erred in assessing Dr. Sioson's opinion and the ALJ's assessment is supported by substantial evidence.

**D.    State Agency Physicians**

Brown also takes issue with the ALJ's handling of the state agency physician opinions. (Doc. No. 9 at 17-18) In particular, Brown suggests that the ALJ erred in relying on Dr. Mikalov's opinion that Brown could perform light work because "it was proffered prior to the submission of much of the evidence in this matter." *Id.* at 18. However, as this Court has recognized, "because state agency review precedes ALJ review, there is always some time lapse

between the consultant's report and the ALJ hearing and decision." *Jones v. Colvin*, No. 5:13CV1781, 2014 WL 4594812, at *3 (N.D. Ohio Sept. 12, 2014) (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)). It is proper for the ALJ to rely on the state agency opinions, as long as subsequent evidence and any relevant changes in the claimant's condition are taken into account. *McGrew v. Comm'r of Soc. Sec.,* 343 F. App'x 26, 32 (6th Cir. 2009). The ALJ did so here.[12]

### E.    Pain

Last, Brown asserts that the ALJ failed to properly consider Brown's pain and points to Social Security Ruling ("SSR") 96-8p. (Doc. No. 9 at 18-21)**.** SSR 96-8p, 1996 WL 374184, provides policies for formulating a claimant's Residual Functional Capacity ("RFC"). The ALJ has the responsibility to resolve the conflicts in the evidence and incorporate only the credible limitations of record in the RFC finding. See 20 C.F.R. § 416.946(c) (the final responsibility for assessing a claimant's RFC rests with the ALJ). Because the ALJ found that Brown's pain complaints were not entirely consistent with the record evidence, the ALJ was not required to incorporate those limitations into the RFC. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."); *See also Lusher v. Comm'r of Soc. Sec.*, No. 1:17-CV-01947, 2018 WL 3302988, at *15 (N.D. Ohio July 5, 2018). Here, Brown has not argued that the ALJ erred in assessing her pain complaints pursuant to SSR 16-3p. Therefore, any challenge to the ALJ's assessment of Brown's credibility is waived.

---

[12] Moreover, as the Commissioner points out, Brown did not summarize or explain how Dr. Mikalov's assessment conflicted with more recent evidence. As the Commissioner explains, recent evidence—as summarized in the ALJ decision—did not reflect any material change in Brown's condition since Dr. Mikalov's review. (Doc. No. 11 at 11)

Assuming *arguendo*, that a SSR 16-3p argument is not waived, the ALJ supported her determination with substantial evidence and that determination must be given deference. After a thorough discussion of the evidence, the ALJ provided the following explanation for assessing Brown's pain complaints:

> The claimant's impairments could reasonably be expected to produce the alleged symptoms, but the intensity of the symptoms and impact on functioning are not consistent with the totality of the evidence. As such, the medical record does not establish functional limitations that would preclude the light exertional level with the additional restrictions stated above. Despite allegations, tests results showed stability and no unexpected findings or evidence of significant worsening. The claimant has maintained system functioning as demonstrated during a majority of examinations that showed no acute distress, regular heart rate and rhythm, clear lungs, 5/5 strength and most often full range of motion, intact neurological functioning, and normal coordination, normal gait, no evidence of a prescribed or medically necessary assistive device, cooperative behavior, full orientation, and ability to provide information, answer questions, and follow instructions. There is no evidence in the record through the date last insured to substantiate additional impairment or deficits in functioning. Moreover, despite allegations, the claimant's course of treatment provided improvement in pain symptoms and stability and generally consisted of follow-up outpatient, routine testing and lab work, a medication regimen, and instruction on diet and exercise.

(Tr. 1538). The ALJ also noted several places throughout the record where Brown's statements were in conflict. For example, the ALJ explained:

> Recall, Claimant testified at her January 2023 hearing that she is not prescribed and does not take any medications for her pain. She only receives injections and uses a TENS unit because that is reportedly the only treatment her insurance provider will authorize. Yet, inconsistent with this testimony she received medication to treat her pain symptoms as referenced above. In addition, despite allegedly not getting any relief from injections, she sought referrals from Dr. Eapen for pain management specialists who treated her with injections, and per chart documentation below, reported the injections helped her.

(Tr. 1527) Thus, substantial evidence supports the ALJ's determination.

Brown does not engage with the ALJ's reasoning. Instead, Brown cites medical evidence that she feels supports her pain symptoms. Much of the evidence Brown lists are her own subjective complaints (Doc. No. 9 at 19 citing Tr. 483, 497, 1738, 1752, 1758, 1761, 1774, 1792, 1815, 1820) The decision is replete with acknowledgements of Brown's subjective pain

40

complaints. (E.g., Tr. 1524, 1526-27) Brown also cites August and October 2019 ER visits and a steroid injection. (Doc. No. 9 at 19 citing Tr. 501, 845) The ALJ discussed the ER visits (Tr. 1524, 1526), as well as Brown's history of steroid injections (Tr. 1521, 1525, 1528). Brown also cites some imaging results including results from 2011, 2013, 2018, and 2019. (Doc. No. 9 at 20 citing Tr. 26-67, 776, 798) However, again, the ALJ discussed Brown's imaging. (Tr. 1524-25, 1529-31, 1534) The ALJ did not ignore any of this evidence and provided substantial evidence in support of her findings.

As this Court has explained, "[r]eciting medical evidence does not show that the ALJ's decision is not supported by substantial evidence." *Garcia v. Comm'r of Soc. Sec.*, No. 1:22-CV-1044, 2023 WL 2333520, at *7 (N.D. Ohio Jan. 27, 2023). Though Brown believes that the ALJ could have—and should have—weighed the evidence differently, that is not an adequate basis for remand. *See, e.g.*, *Thomas v. Comm'r of Soc. Sec.*, No. 1:13CV1777, 2014 WL 2114567, at *16 (N.D. Ohio May 20, 2014) ("Essentially Plaintiff is asking the Court to reweigh the evidence, give her the benefit of the doubt to the extent that these facts may weigh in her favor and then advance a different view; however, this Court is charged with determining the sufficiency of the evidence not its weight). The Court must accord great weight and deference to an ALJ's determination about the consistency of a claimant's alleged symptoms. *Workman v. Comm'r of Soc. Sec.*, 105 Fed.Appx. 794, 801 (6th Cir. 2004) ("An ALJ's credibility assessment must be accorded great weight and deference."); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir.2003) (explain that in reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Plaintiff's testimony] are reasonable and supported by substantial evidence in the record." The Court must defer to an ALJ's findings if they are supported by substantial evidence, even if substantial evidence also

supports the opposite conclusion. *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 604-05 (6th Cir. 2009); *see also O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (*quoting Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)) ("[T]he Commissioner's decision still cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ."). As the Sixth Circuit has explained, "an administrative law judge's credibility findings are virtually unchallengeable absent compelling reasons. *Shepard*, 705 Fed. Appx. at 442. Brown presents no such compelling reasons here.

## VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge further recommends that the Commissioner's final decision be AFFIRMED.


Date:  March 1, 2024                          *s/ Jonathan Greenberg*
                                              Jonathan D. Greenberg
                                              United States Magistrate Judge


## OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**